UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. RAFIK BENAISSA,<br><br>      Plaintiff,<br><br>   -against-<br><br>KEEP AMERICA GREAT PAC a/k/a DEMOCRATIC COALITION AGAINST TRUMP, FRANCESCA LUCIA, JON COOPER, NATHAN LERNER, SCOTT DWORKIN, CHUCK WESTOVER, and JARAD GELDNER,<br><br>      Defendants. | Civil Action No.<br><br>**COMPLAINT**<br><br>Jury Trial Demand |

> The First Amendment safeguards an individual's right to participate in the public debate through political expression and political association. When an individual contributes money to a candidate, he exercises both of those rights: the contribution serves as a general expression of support for the candidate and his views and serves to affiliate a person with a candidate.
>
> Those First Amendment rights are important regardless whether the individual is, on the one hand, a lone pamphleteer or street corner orator in the Tom Paine mold, or is, on the other, someone who spends "substantial amounts of money in order to communicate his political ideas through sophisticated means. Either way, he is participating in an electoral debate that we have recognized is integral to the operation of the system of government established by our Constitution.
> (*McCutcheon v. Federal Election Commission, 572 U.S. ___* [2014])

Plaintiff DR. RAFIK BENAISSA ("Dr. Benaissa" or "Plaintiff"), by his attorneys Daniel Szalkiewicz & Associates, P.C., hereby brings this Complaint against the defendants KEEP AMERICA GREAT PAC a/k/a DEMOCRATIC COALITION AGAINST TRUMP, FRANCESCA LUCIA, JON COOPER, NATHAN LERNER, SCOTT DWORKIN, CHUCK

1

WESTOVER, and JARAD GELDNER (collectively "Defendants") and in support therefore, alleges, upon information and belief, as follows:

## NATURE OF THE ACTION

1. This action arises from the Defendant KEEP AMERICA GREAT PAC a/k/a DEMOCRATIC COALITION AGAINST TRUMP ("KAG PAC") defamatory and false statements accusing Dr. Benaissa, a trauma surgeon responsible for saving the lives of critically injured patients, of being a terrorist and connected to the late Libyan dictator Muammar Gaddafi. Dr. Benaissa immigrated to America and chose to celebrate his freedom of expression by making a minimal contribution of $2,700.00 to Donald Trump's presidential campaign. Seizing upon the opportunity to publically shame a private citizen based on his choice of political candidate, KAG PAC issued a "press release" riddled with lies and false statements of fact. KAG PAC's actions were maliciously undertaken and with a reckless disregard of the truth, causing injury to Dr. Benaissa in his profession and business, driven by a desire to embarrass, harm and hold Dr. Benaissa victim to public scorn and ridicule.

2. KAG PAC's exploits show that no citizen is free to express his or her support for a presidential candidate without the fear of being attacked online. The false lies that KAG PAC published on the World Wide Web were intended as a negative societal sanction because its members do not share the same political views as Dr. Benaissa.

3. Perhaps the most disturbing thing about the Defendants' willful, reckless disregard of the truth and gross negligence is their blatant racial profiling of Dr. Benassia. It is highly likely that the Defendants researched Donald Trump's donors list for a Middle Eastern sounding name, and then attempted to destroy that individual's reputation based solely on the perceived color of his skin and his national origin.

4.      When searching Plaintiff's name on Google, over 9,840 results are generated and Defendants' defamatory statements appear on the second page (see Exhibit "A").

## **STATEMENT OF FACTS PERTAINING TO ALL CAUSES OF ACTION**

## **THE PARTIES**

5.      Plaintiff is, and at all times relevant to this action has been, an individual residing in the State of North Dakota.

6.      Plaintiff is an orthopedic trauma surgeon licensed to practice in nine states and two countries, including the United States and Canada.

7.      Plaintiff is not a public official or public figure.

8.      Upon information and belief, defendant KAG PAC is a political action committee that was formed in March 2016.

9.      Defendant KAG PAC's principle place of business is PO Box 26-20197, New York, NY 10129, and the FEC Statement of Organization was signed by Defendant Nathan Lerner.

10.     Defendant KAG PAC also runs Artists Against Trump, a group of more than 50 artists that includes award-winning actor Danny Glover, Daily Show creator Lizz Winstead, and Aasif Mandvi.

11.     Upon information and belief, Defendant FRANCESCA LUCIA ("Lucia") is a resident of the District of Columbia, currently residing at 3404 13th St NW, Apt 102, Washington DC 20010.

12.     Defendant Lucia is the Vice President, Press Contact, and National Finance Director of Defendant KAG PAC.

13. Upon information and belief, Defendant Lucia is an author on the website http://www.keepamericagreat.us/.

14. Upon information and belief, Defendant Lucia creates content on the website http://www.keepamericagreat.us/.

15. Upon information and belief, Defendant Lucia is the owner of the website http://www.keepamericagreat.us/.

16. Upon information and belief, Defendant Lucia is an author and publisher of the defamatory statements.

17. Upon information and belief, Defendant JON COOPER ("Cooper") is a resident of the State of New York, currently residing at 28 Lloyd Point Dr., Lloyd Harbor, New York 11743.

18. Defendant Cooper is the Chair of Defendant KAG PAC, and served for 12 years on the Suffolk County Legislature.

19. Upon information and belief, Defendant Cooper is an author on the website http://www.keepamericagreat.us/.

20. Upon information and belief, Defendant Cooper creates content on the website http://www.keepamericagreat.us/.

21. Upon information and belief, Defendant Cooper is the owner of the website http://www.keepamericagreat.us/.

22. Upon information and belief, Defendant Cooper is an author and publisher of the defamatory statements.

23. Upon information and belief Defendant NATHAN LERNER ("Lerner") is a resident of the State of New Jersey, currently residing at 1207 Willow Avenue, Hoboken, New Jersey 07030.

24. Defendant Lerner is the Executive Director and Founder of Defendant KAG PAC.

25. Upon information and belief, Defendant Lerner is an author and publisher of the defamatory statements.

26. Upon information and belief, Defendant Lerner is an author on the website http://www.keepamericagreat.us/.

27. Upon information and belief, Defendant Lerner creates content on the website http://www.keepamericagreat.us/.

28. Upon information and belief, Defendant Lerner is the owner of the website http://www.keepamericagreat.us/.

29. Upon information and belief Defendant SCOTT DWORKIN ("Dworkin") is a resident of the District of Columbia, currently residing at 51 Rhode Island Avenue, NW, Apt. 4, Washington, DC 20001.

30. Defendant Dworkin is a Senior Advisor to Defendant KAG PAC.

31. Upon information and belief, Defendant Dworkin is an author and publisher of the defamatory statements.

32. Upon information and belief, Defendant Dworkin is an author on the website http://www.keepamericagreat.us/.

33. Upon information and belief, Defendant Dworkin creates content on the website http://www.keepamericagreat.us/.

34. Upon information and belief, Defendant Dworkin is the owner of the website http://www.keepamericagreat.us/.

35. Upon information and belief Defendant CHUCK WESTOVER ("Westover") is a resident of the District of Columbia, currently residing at 1004 9th St. NE, Washington, DC 20002.

36. Defendant Westover is a Senior Advisor to Defendant KAG PAC.

37. Upon information and belief, Defendant Westover is an author and publisher of the defamatory statements.

38. Upon information and belief, Defendant Westover is an author on the website http://www.keepamericagreat.us/.

39. Upon information and belief, Defendant Westover creates content on the website http://www.keepamericagreat.us/.

40. Upon information and belief, Defendant Westover is the owner of the website http://www.keepamericagreat.us/.

41. Upon information and belief Defendant JARAD GELDNER ("Geldner") is a resident of the State of Maryland, currently residing at 1801 Alcan Dr, Silver Spring, MD 20902.

42. Defendant Geldner is a Senior Advisor to Defendant KAG PAC.

43. Upon information and belief, Defendant Geldner is an author and publisher of the defamatory statements

44. Upon information and belief, Defendant Geldner is an author on the website http://www.keepamericagreat.us/.

45. Upon information and belief, Defendant Geldner creates content on the website http://www.keepamericagreat.us/.

46. Upon information and belief, Defendant Geldner is the owner of the website http://www.keepamericagreat.us/.

## JURISDICTION

47. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(l) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

48. Venue is proper in the Southern District of New York pursuant to 28 U.S.C.§ 1391. All defendants either reside or are employed in and may be found in the Southern District of New York and a substantial part of the events giving rise to these claims occurred in this district. Specifically, according to FEC filings, Defendant KAG PAC is registered in the Southern District of New York, and each defendant runs, or is employed, by Defendant KAG PAC.

49. That at all times herein mentioned, Defendants Lucia, Lerner, Dworkin, Westover, and Geldner were non-domiciliary of the State of New York. However, Defendants did transact sufficient business within the State of New York, and derived substantial revenue in the State of New York, to subject themselves to the jurisdiction of the courts of the State of New York.

## THE FACTS

### The Democratic Coalition Against Trump Website

50. On or about March 26, 2016, the Defendants created a website entitled the "Democratic Coalition Against Trump" and is located at the url www.keepamericagreat.us/ (the "Website").

51. The Website's primary goal is to "make sure that Donald Trump never becomes President.[1]" The Defendants admit that they are attempting to create "aggressive digital" advertising in an effort to "directly counter[] Donald Trump, along with Republican elected officials and candidates who support him." (*Id.*).

52. The Website is run by a six person "team," including Defendants Lerner, Cooper, Dworkin, Lucia, Westover, and Geldner.

53. The Website contains five sections; "The Coalition," "About," "Our Team," "News," and "Press Releases."

54. Upon information and belief, the sole purpose of the website is publish inflammatory statements about Donald Trump and alleged Trump supporters, so that readers feel compelled to donate money to defendant KAG PAC. In blue bold letters on every pages is a "DONATE" section, that allows users to "JOIN OUR MOVEMENT AGAINST TRUMP.[2]" Defendants assert that "Keep America Great PAC is the fundraising arm of the Democratic Coalition Against Trump. All money raised will go towards making sure that Donald Trump is NEVER President of the United States."

55. The Defendants attempted to tarnish Plaintiff's good name for sole financial motives with reckless disregard of the truth.

**The Defamatory "Press Release"**

56. On or about August 24, 2016, the Defendants filed a defamatory "Press Release" on their website. The "Press Release" was entitled "Gaddafi Tied to Top Trump Campaign

---

[1] http://www.keepamericagreat.us/about
[2] https://secure.actblue.com/contribute/page/keep-america-great-pac

Donor" and is still located at the url http://www.keepamericagreat.us/gaddafi (the "Press Release")(See Exhibit "B").

57. Upon information and belief, the Press Release is written by Defendants Lerner, Cooper, Dworkin, Lucia, Westover, and Geldner. Defendant Lucia provides her contact information at the bottom of the Press Release, "francesca@keepamericagreat.us, 914-618-0446."

58. According to the Press Release, Dr. Benaissa "is a major benefactor of the Trump campaign," although he only provided the campaign only with $2,700.00. The Press Release, in reckless disregard of the truth, falsely states that Dr. Benaissa "conducted major business dealings with the regime of the late Libyan dictator Muammar Gaddafi, totaling hundreds of millions of dollars, if not more" (See Exhibit "B," fully incorporated herein).

59. The above referenced statement is blatantly false. Dr. Benaissa never conducted business with Gaddafi or his regime, and never earned hundreds of millions of dollars. The statement was made with the sole intention of destroying Dr. Benaissa's reputation, done with malice, and a total disregard for the truth.

60. The Press Release, supposedly citing a Globe and Mail article and a Huffington Post source, continues to falsely state, "Dr. Benaissa repeatedly tried to do business in Gaddafi's Libya." However, the two articles do not state this, and in fact, the quote the Press Release sources actually states, "Dr. Benaissa promoted U.S. and UK security products."

61. Interjecting himself into the Press Release, Defendant Dworkin accuses Dr. Benaissa of being an "actual supporter[] of terrorist regimes" (See Exhibit "B," fully incorporated herein).

62. Finally, the Press Release contains a statement by Defendant Cooper, wherein he accuses Dr. Benassia of having "extensive business dealings with Libyan strongman Muammar Gaddafi" (See Exhibit "B," fully incorporated herein).

63. The Press Release was shared on Defendant KAG-PAC's Facebook account and received 582 reactions, 90 comments and 362 "shares."

## **SPECIAL DAMAGES**

64. Plaintiff alleges that each and every allegation falls under one of the four per se exceptions for defamation. Additionally, Plaintiff alleges that each and every statement was made with malicious intent.

65. However, based on Defendants comments and actions, Plaintiff has suffered special damages.

66. Plaintiff will continue to suffer losses such as internet-related expenses, lost admitting privileges into hospitals and other lost professional development and advancement opportunities because of Defendants' actions.

67. Dr. Benassia also suffers emotional turmoil as a result of the Press Release. Upon release of the false Press Release, Dr. Benassia was devastated and embarrassed about the false accusations that he had possible connections to the allegations in the Press Release.

68. More so, based on Defendants' harassment, Dr. Benassia fears that he will be unable to continue his duties as a surgeon because each of his actions will be questioned based on accusations of being a terrorist.

69. The good will that Plaintiff has established in the community was devastated by the Defendant's malicious actions.

70. Defendants' misconduct described herein has been deliberate, outrageous, malicious, wanton, oppressive, reckless, grossly reckless, and intentional. Their actions evidence a high degree of moral turpitude and demonstrate such blatant dishonesty as to imply a criminal indifference to civil obligations. Defendants have further engaged in this misconduct with improper motives with vindictiveness and reckless, wanton disregard of Plaintiff's rights and well-being.

71. Defendants' anti-Muslim, anti-Middle East bias appears to be the sole incentive for singling out Dr. Benassia and publishing false statements of fact.

72. The Defendants' gross recklessness is apparent. They never attempted to contact Dr. Benassia prior to the publication of the Press Release. In one of the two articles that are cited as "sources" for the Press Release, the author actually states:

> On Nov. 5, orthopedic trauma specialist Rafik Benaissa filed a $5-million lawsuit against SNC-Lavalin accusing the company of using his brother as a scapegoat and damaging his family's name.[3]

73. Additionally, the Globe and Mail article further shows Plaintiff did not have any associations with Gadhafis:

> Dr. Benaissa declined an interview request and referred questions to a Montreal lawyer, Anthony Karkar. Mr. Karkar said his client had no relationship with the Gadhafis or SNC-Lavalin, and that he had never used his brother's ties to the regime to secure business. The fact that Dr. Benaissa had to attend a public exposition is evidence that he had no relationship with the Gadhafis, Mr. Karkar said.[4]

74. Clearly, any reasonable reader would realize there is a red flag and should have taken the time to do additional research prior to destroying a trauma surgeon's good name.

---

[3] http://www.huffingtonpost.ca/2012/11/25/snc-lavalin-case_n_2188620.html
[4] http://www.theglobeandmail.com/news/world/riadh-ben-aissa-canadas-most-mysterious-businessman/article4102397/?page=all

75. Plaintiff was earning between $500,000 and $800,000 a year, and Defendants' actions could cause damages, including punitive damages, in excess of $55,000,000.00.

### FIRST CAUSE OF ACTION
**(Libel)**

76. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

77. The information the Defendants posted and disseminated on the internet about Dr. Benassia is false and defamatory, not the subject of any privilege, and is viewable by many third parties.

78. Defendants had actual knowledge that the information they published about plaintiff was false and knew, or should have known, that the information they published about plaintiff was false and defamatory.

79. Defendants acted with knowledge of the falsity of these statements and the implications therefrom, reckless disregard for the truth, and/or with malicious intent, both presumed and actual, in knowingly publishing, posting, and widely disseminating such false statements to third parties.

80. The statements referenced above, published by Defendants regarding Dr. Benassia, are and were false when made.

81. These statements defame and otherwise impugn Plaintiff's character, integrity, reputation, charge him with a serious crime, and disparaged the Plaintiff in his profession, trade and/or business and are libelous *per se*.

82. However, even if the damages are not presumed, Plaintiff has suffered special damages in that the lies Defendant has spread has severely injured his reputation as an

upstanding institution; and has caused countless other economic damages brought on by the wrongful assertion of fraud and theft.

83. The published false comments were made with the intent to harm plaintiff and with actual malice.

84. The Defendant's unlawful conduct has caused and will continue to cause Plaintiff imminent, irreparable injuries for which there are no adequate legal remedies. Accordingly, Plaintiff is entitled to permanent injunctive relief.

85. Because Defendant has placed Plaintiff's personal character and reputation publicly at issue, plaintiff is entitled to a declaratory judgment that Defendant's statements are false.

86. As a consequence of the Defendant's conduct, Plaintiff's reputation has been injured, and the plaintiff has suffered economic loss, as previously described.

87. The statements are of and concerning Plaintiff.

88. Defendants were negligent, and grossly reckless, in not seeking meaningful comment from Dr. Benaissa.

89. Defendants were negligent, and grossly reckless, in deciding to publish the Press Release.

90. Here, the acts of Defendants were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate Dr. Benaissa's protected rights under the United States Constitution, that, in addition to all the damages inflicted upon Dr. Benaissa and in addition to all the measure of relief to which Dr. Benaissa may properly be entitled herein, Defendants should also be required to pay punitive damages to punish them for its reckless conduct in the further amount greater than the

jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

91. Dr. Benaissa, therefore, seeks, including, among other things, monetary losses and the emotional harm inflicted upon him in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, and punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially established and accepted when attorney's fees are provided by the law.

## SECOND CAUSE OF ACTION
### (Slander)

92. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

93. The statements spoken by Defendants Cooper and Dworkin regarding Plaintiff are and were false when made.

94. Defendants Cooper and Dworkin acted with knowledge of the falsity of these statements and the implications therefrom, reckless disregard for the truth, and/or with malicious intent, both presumed and actual, in knowingly publishing such false statements to third parties.

95. These statements defame and otherwise impugn Plaintiff's character, integrity, reputation, charge him with a serious crime, and disparaged the Plaintiff in his profession, trade and/or business and are libelous *per se*.

96. The statements are libelous *per se,* so that general damages may be presumed as a matter of law.

97. Here, the acts of Defendants were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate

Dr. Benaissa's protected rights under the United States Constitution, that, in addition to all the damages inflicted upon Dr. Benaissa and in addition to all the measure of relief to which Dr. Benaissa may properly be entitled herein, Defendants should also be required to pay punitive damages to punish them for its reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

98. Dr. Benaissa, therefore, seeks, including, among other things, monetary losses and the emotional harm inflicted upon him in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, and punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially established and accepted when attorney's fees are provided by the law.

**THIRD CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**

99. Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

100. Defendants' sole purpose of publicizing the defamatory statements via various media outlets and Defendants own website was to harass Plaintiff, and publish to the whole world false and defamatory statements.

101. Defendants' have intentionally posted the defamatory statements to inflict emotional distress by continuing to embarrass and humiliate Plaintiff each day their website remains active and each day the Press Release remains available on the internet.

102. Defendants intended to cause severe, emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and intolerable in a civilized society.

103. Here, the acts of Defendants were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate Dr. Benaissa protected rights under the United States Constitution, that, in addition to all the damages inflicted upon Dr. Benaissa and in addition to all the measure of relief to which Dr. Benaissa may properly be entitled herein, Defendants should also be required to pay punitive damages to punish them for its reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

104. Dr. Benaissa, therefore, seeks, including, among other things, monetary losses and the emotional harm inflicted upon him in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, and punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially established and accepted when attorney's fees are provided by the law.

**WHEREFORE**, Plaintiff requests judgment against Defendants:

 (a) for damages in an amount to be determined at trial;
 (b) punitive damages;
 (c) the costs of this action; and
 (d) such other and further relief as the Court may deem just and proper,

Dated: New York, New York
   October 5, 2016

            **Daniel Szalkiewicz & Associates, P.C.**
            /s/ Daniel Szalkiewicz

            _____
            By: Daniel S. Szalkiewicz, Esq. (DS2323)
            7 Dey Street, Suite 900B
            New York, New York 10007